This is the case of People of the State of Illinois v. Irenia A. Cotner. We have Mr. Tom Gonzales, the appellant, and we have Ms. Rebecca McCormick, the appellee. Whenever you're prepared to proceed, Mr. Gonzales. Good afternoon, Your Honors. Good afternoon. Thank you, Counsel. Cotner acknowledges that Spokal pretty much resolves the second issue, so I'm going to confine my arguments and comments to issue number one. Cotner maintains that the issue here is whether post-conviction counsel's performance under 651 was reasonable. In other words, whether Cotner should be allowed to declean her original claim. And we maintain that she should. The question here, of course, necessarily begins with what Cotner raised in her pro se petition. From there, the rule requires that counsel investigate and make any necessary amendments or additions for adequate presentation. Which, of course, necessarily contemplates going beyond the pleadings and documents to allege a case upon which relief can be granted. So, the rule, of course, does contemplate some outside or some added investigation. And, of course, doesn't confine counsel to just strictly the wording of a plea. So, in this case, of course, most of our contention is centered on the fact that she made this complaint about Jackie Jackson. And I'll be the first to acknowledge that, of course, it was inarticulately drafted. There was a lot of parts of which didn't entirely make sense or which was pretty much hard to follow. Some of the words were unreadable and difficult to understand. But I think at the end of the day, a couple of things that I think stand out. One of which is the court, the circuit court itself, was able to glean enough from the pro se pleadings to voice some concern. Okay, again, we acknowledge that there was a lack of specificity or I guess perfectly linear language. But I think what certainly I think any person could glean from this is collectively that her complaint centered around Jackie Jackson. And this notion that somehow he was currying favor or that somehow he was getting grades, perhaps to procure or in some type of exchange for his testimony. And that's evident by a couple of things. Okay, aside from her inarticulately drawn petition is these documents that she attached. One was from a paralegal, at least her. She was a paralegal, I guess, who worked for trial counsel. She basically, again, raised this whole issue as to Jack getting picked up. Apparently, he was picked up for eluding police and I think some cannabis possession on October 1st, which would have been, I think, two or three weeks before trial in 2006. And the fact that subsequently it was just dismissed without an explanation. I think two components of her allegations which I think pretty much center our argument. One is, of course, that again, the currying favor. And number two, the fact that Connor didn't know about it. Let me be clear. Appointed counsel filed 14 additional issues for the court to consider. But the one you say that they failed to present was the undisclosed deed. Is that right? Yes. Between the state and Jackie Jackson? Yes. Yes. And I guess to break it down, it's basically the fact that, again, the rule begins with her original allegation. And whether or not it was reasonable or unreasonable, we can say it was unreasonable for counsel to outright abandon that claim in favor of raising, I think, a total of 39 claims. All of which collectively were either matters of record. Many of which were already litigated and rejected on direct appeal. Others which basically had no impact on the outcome of the trial. So our contention is that that particular course of action is the evidence, I guess, rebutting that presumption created by the Rule 651 certificate. One of counsel's main responses is that, well, because counsel filed a 651 certificate, because he made these comments early on that he had preliminarily talked to some witnesses, that that somehow creates this ironclad presumption of reasonable assistance. And our position is, well, we acknowledge that the certificate typically provides a presumption of compliance. But our position is, well, the fact that he outright abandoned this claim, which, again, seems to be the centerpiece, mostly of her pro se allegation, in favor of raising these 39 claims that, again, were already rejected on direct appeal, which were matters of record, which had absolutely no bearing on the outcome of the trial. For a classic example, this reference to the photographs of blood droplets and things like that, things that had absolutely no effect on the outcome of the trial. Whereas, I think, to the extent that the court raised some concern about this notion, about what Jackie Jackson, how he ended up being charged shortly before trial, and his charges ultimately disappearing, unbeknownst and unexplained serious charges at that, eluding police drug possession, there was a letter from, I guess, some guy named Josh. I can't make out the last name. But it was the guy who was allegedly in the car with Jackie at the time he was picked up. And he basically alleged in his letter was, well, hey, he actually had a lot more, it was a lot more serious than what he was charged with. And so, well, yeah, at the end of the day, I know the state makes a lot of hay about whether or not this was meritorious, about whether or not this really would have amounted to anything, whether or not it would have eventually entitled the contender to a stage three evidentiary hearing. Our position, though, is that that's putting the cart before the horse. The whole issue is whether or not it was reasonable for counsel to do nothing with these claims, despite the fact that the court expressed some concern over them, in favor of raising these other allegations that had absolutely zero of getting an evidentiary hearing, basically abandoning this one claim outright, which the court, again, the court never had a chance to review it because counsel abandoned it. How do you respond to the state's argument that this deal meant nothing because Jackson testifies on the first day of the trial. This conversation is supposed to be happening the third day. He already testified. Right, right. And I guess my response to that is truthful because the state, in addition to that, also comments that, well, he also happened to be one of the victims in this case. So that somehow separates him from perhaps a typical witness who might need some priority to come in. So to me, as far as whether or not it's the first day or the second day or the third day, I think at the end of the day, it doesn't really matter. I think what's important is, again, getting back to the point, or getting to the point where the state talks about him being a victim. Well, my response to that is victims can't be presumed to be motivated just automatically to testify. I mean, oftentimes it's not common for victims to not want to come forward or to need extra priority or to not necessarily be motivated to come in and be held in court to testify. I mean, of course, we don't know just from the state of this record whether or not that was the case or not. But certainly it doesn't, just because of the fact that he's a victim, doesn't mean that he didn't need some kind of priority to come in or some added motivation to come in. And as far as whether or not it's the first day or the second day or the third day, the fact is, again, I think part of the answer, too, is what juncture of proceedings are we at? Okay, this was stage two. Counsel was appointed to shape counsel's or shape counselor's claims into an adequate presentation. And then later on in the day, yes, then we can ask all of these questions about whether or not, you know, what were the merits and whether or not she actually, you know, was entitled to a full-blown or evidentiary or beyond that post-conviction relief. But whether or not it was the first day or the second day or the third day, I think the fact remains is that it raises serious questions as to whether or not, you know, he was in fact occurring some type of favor as to whether or not he was. I mean, it's an unusual set of circumstances. And to the extent, again, that the court seemed to be concerned enough about it, I know the court didn't clearly articulate or didn't specifically identify this particular issue. But I think this is the one issue. I think that that does jump out of the petition. Although it's disjointed, although many parts are, again, I acknowledge it's hard to follow. A lot of it doesn't make sense. And she goes off on different tangents. I know she refers to Jenny and the other witness who got, but again, that's to the extent that she only needs to show one valid claim to be entitled to post-conviction relief. That coupled with the fact that this really does seem to be centered on Jenny. And had this, you know, had counsel been able to, you know, shape this and not abandon it, I think what's important, too, is that this avenue of impeachment, it created some possible significant avenue of impeachment. You know, Jackie contended that, you know, he knew Ms. Lindner, and that Lindner was somehow connected to Kottner. And this was all fertile area for, you know, trial counsel could have exploited that. And under my discredibility and support of the defense's claim that this was some drug-related robbery gone awry and not some conspiracy attributed to Kottner. So that's- Mr. Gonzales, you'll have opportunity for rebuttal. Your time is up. Thank you. Thank you. Ms. McCormick. Your Honors, counsel, the defendant filed a pleading, a pro se handwritten pleading that was labeled as a condition of relief for judgment. The court decided to recharacterize that and advance it to the second stage and appoint counsel. Counsel that was appointed filed a Rule 651C certificate stating that he had done the things that counsel is supposed to do. Now, this raises a presumption that he did do so. And it is the defendant's burden now on appeal to show that he didn't, from the record. And the defendant cannot show this. Furthermore, the defendant was present at the proceedings on the supplemental petition that counsel filed. And the court said in open court that this supplemental petition replaces the pro se filing. And, of course, counsel hadn't included the pro se claims, but he made a very detailed post-conviction supplemental petition that contained 39 points. He did what he was supposed to do. And at the same time, the defendant did not, even though being told in open court that this replaced her pro se petition, she said nothing. And now, for the first time on appeal, she's saying, oh, he abandoned my pro se claims and he shouldn't have done this. Well, she shouldn't be allowed to sit silent in court when she's told that this supplemental petition replaces her pro se pleading and say nothing. And then, on appeal, say, oh, I fouled because he didn't include my pro se claims. And that's the first point. The second point is that there is nothing in the record that shows, and the defendant can't show it from the record, that counsel did not do what Rule 651 requires of post-conviction counsel. That's the second point. The third point is that counsel had a good reason for not including those pro se claims because they're illogical and there's nothing to them. Now, Jackie Jackson was a victim, but, of the crime. He was in the basement with his pregnant girlfriend at the time of the attack. Irania Cotner had been, he had dated Irania Cotner in the past, but they had broken up and now he's with this other woman. And it is this woman and her unborn child that is the target of her plot and her coven's goal is to kill this woman, his girlfriend, who is pregnant. Instead, they break into the house and they stab Jackie Jackson's mother and they kill Jackie Jackson's, he calls him a brother. He's really a stepbrother. He calls him a brother, but he sees him that way and they kill him. He manages to come up and kill one of the attackers and the other one gets away. So, Jackie Jackson, it's strange credulity and there is nothing in the record that would show that he has to be making a deal for the state to get his testimony at the trial. Because this is a man who is personally a victim. His mother has been stabbed, his stepbrother has been killed, and it is his girlfriend and their unborn child that was the target of the attack. Logic says, in the absence of anything else that would show that he was a reluctant testifier or witness, Logic says, no, he wasn't reluctant and there wasn't any reason the state had to put pressure on him to testify. There's nothing in the record that would show that. So, there is no nexus between these dropped charges and why it is that Jackson testified at trial. There are two different circumstances. The defendant's pleadings and her pro se claims never draw a nexus between these dropped charges and Jackie Jackson's testimony. Instead, the conversation from which you could strainedly draw an inference that there was something like that took place on the third day of trial after Jackie Jackson had testified on the first day. So, there's simply no nexus. This is a whole ball of speculation, wild speculation. And counsel had no reason to even attempt, although presumably he did look into it, to put this in the supplemental post-conviction petition. And presumably, since Irina Kautner sat there and heard the court say, this supplemental petition replaces the pro se filing, and she says nothing. Presumably, she agreed with that. She agreed that this was the petition she wanted presented, the supplemental petition. Did the trial court in any way address her and say, you understand that what you have filed has now been replaced? No, he just made the statement in open court, and counsel says, that's correct, Your Honor. The supplemental is what we're moving forward on. That's his son saying that, right? Yeah, it's her counsel saying that. But she doesn't object. She never says, no, I really wanted this in it. She never says it at all. This is the first time we hear it on appeal. And she shouldn't be permitted to do that, stand silent below, and then raise it for the first time on appeal. And there's nothing in the record that contradicts anything of counsel's 651C certificate. The presumption stands that he did give her the representation that he was required to give by Rule 651C. This is 651. And for that reason, this court should affirm. Mr. Gonzalez? Yes, just briefly. Well, the contradiction of that presumption of compliance is, of course, I reiterate, is the fact that he didn't present it. I mean, our whole point is that that is the complaint, is that counsel didn't present this pro se claim. Now, the state comes back to this whole point about Cotner standing silent, whether or not she complained, when counsel said, you know, we're going to file this in the state of the original. That's our entire point. That's the whole point of the argument. That's what makes this a violation of Rule 651. The case cited by the state, People v. George, that's an entirely different scenario. That's classic apples and oranges comparison. That's a case where, and that's a more understandable set of circumstances, where, for example, in that case, the defendant opts for a bench trial, goes through the whole motion, and then at the end of the day, he loses. And then he tries to get a second by the apple by complaining, oh, boy, I don't have a valid hearing waiver. Okay, that's entirely understandable. But this is more in line and akin to, well, hey, she's alleged she didn't get effective assistance of counsel. There's certainly no law that requires that a defendant voices an objection to a level of representation. I mean, that's the whole purpose of appeal. That's why we have courts of review. So there's certainly no, the state cites no authority for that, you know, pretty unique proposition. I mean, that just doesn't make sense, to require Cotner to voice an objection. And as you pointed out in your question earlier, well, yeah, certainly the court didn't ask that. And I submit it's because that's not the law. The court doesn't, there's no requirement on the part of Cotner to vocalize an objection. As far as- You're raising that an appointed attorney failed to fully comply to consult with his client and inform her. I mean, there's nothing in the record that disputes that his certificate, his 51 certificate is true, that he consulted with her. Well, yeah, we're certainly not. That's not our contention, of course. I mean, and it states what it says in there, but that doesn't make it, again, that just creates a presumption. And our position is the fact that counsel just basically decided to forego this issue in favor, again, of raising these 39 claims that basically had no prayer because they were all issues that had already been litigated and rejected. Again, the rule does require that everything starts from the original allegation. And that's our whole point. If counsel, let's say counsel did investigate this and ask all the relevant questions, well, if counsel thought this had no merit, instead of fighting these other 39 claims that were, again, had already been litigated and rejected on direct appeal, counsel should have just stood on the pro se petition. And yeah, okay, it wasn't linear. It wasn't perfectly, you know, that easy to understand, but there was something in there. And, you know, I put it together in a brief, and I think it was certainly something that could have been shaped into this whole notion about the quid pro quo, perhaps, at least some avenue of impeachment with respect to Jackie Jackson. And it does support, it would have supported her theory. Again, her theory, I know the state talks about what Jackie Jackson claimed that Conner was her ex. Well, part of these pleadings, I mean, she also talks about the fact that he's a liar, that they never dated. Well, wait a minute. No, he doesn't have this kind of intimate connection with me. And that certainly could have supported her theory that, wait a minute, Joshua Bennett did not die from a conspiracy of which I was a part. This was just totally unrelated between Lindner, the guy who went into the house, and Jackie Jackson, who was known to, according to the documents, to be this drug addict. He was known to keep drugs in the house. He was frequently targeted by drug sellers and that type of thing. I mean, that was what they tried to do originally at trial, but the court didn't let them. The court didn't let it, for example, David Lindner's background. And, you know, the defense at trial made every effort to try to get that stuff in and to try to portray this as something other than this conspiracy or that this motivational part of Conner as some kind of jilted lover.  He was making all of this stuff up. And Jackie is important, even though we have all of these other witnesses that talk about the conspiracy leading up to it. But that's, again, that's an entirely different set of circumstances. We're talking now about Jackie's role in the trial. And he was able to testify to events inside the house. And his main connection to, you know, he basically connected Conner to Lindner, saying, yeah, I know this Lindner guy. I've seen him at Conner's house a day before. We used to date. I used to work for Conner's father. I was intimately connected. And we used to date at one time. And Conner says, no, no, no, that's not true. He's a liar. And she's trying to scream up and down that, hey, he's lying. He got picked up. I find out now he's got picked up on these charges. They were disappearing for, unbeknownst to me, for some unexplained reason. And this is something that was worthy of at least, if not shame, at the very least, not abandoning him. But Conner accomplished what he should have done, which is some, you know, adequately presentable claim. That's our whole point. Any questions? Thank you, Mr. Gonzales. Thank you, Ms. Montgomery. We'll take the matter under advisory.